```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


WILLIAM P. HAUG              : CIVIL ACTION
                             :
     vs.                     :
                             :
CEC, Operator of George W.   : NO. 11-CV-5290
Hill Correctional Facility,  :
ET. AL.                      :
```

**MEMORANDUM AND ORDER**

**JOYNER, C.J.**                                     **January    23, 2013**

This Section 1983 action has been brought before the Court on motion of Defendants CEC (Community Education Centers, Inc.), Emanuel Asante and Frank Green for the entry of summary judgment in their favor as to all of Prisoner-Plaintiff's claims against them. After careful consideration of the record evidence, the motion shall be granted.

**Summary of Relevant Facts**

On October 4, 2010, Plaintiff William Haug was arrested by the Ridley Township (Delaware County, Pennsylvania) Police Department for various offenses and transported to the George W. Hill Correctional Facility in Thornton, PA. (Def. Exhibits "B" and "C"). The following day, when Plaintiff was seen in the prison medical receiving unit, he advised the intake physician assistant that he suffered from attention deficit hyperactivity disorder (ADHD), anxiety and panic attacks. Plaintiff also

reported that he was then currently taking Xanax, 2 mg., three times per day and he provided the name and phone number of the pharmacy in Woodlyn, PA where his prescription was on file and had been filled. (Def. Exhibit "C", CEC-000001-000003, CEC-000008; Pl's Dep., pp. 23-26, 36). Plaintiff's intake physical examination revealed him to be in good health otherwise, although curiously, his mental health intake assessment reflects that Plaintiff was not taking any psychotropic medications, did not appear overly anxious or afraid, showed no signs of withdrawal or mental illness, and that he had no history of outpatient mental health treatment. (Def. Exhibit "C", CEC-000019).

Plaintiff did not receive any of his prescribed medication after his incarceration with the result that he began experiencing withdrawal symptoms within days of his admission to the defendant correctional facility. According to Plaintiff, he was sweating, dizzy, nauseous, had diarrhea, couldn't sleep and he felt faint and anxious, like he "was crawling out of [his] skin," and he "started to think [he] was seeing things." Plaintiff testified that, from October 5th until he was eventually seen on October 14th, he asked the guards every day to take him to the medical unit. (Pl's Dep., pp. 33-34). Finally, on October 14th, one of the corrections officers[1] whom Plaintiff

---

[1] Two of these corrections officers, whom plaintiff first identified in his initial pleadings only as "Robert" and "George" are defendants, although the record indicates that they have not been served. Similarly, although Plaintiff was granted leave to amend his complaint to join the intake

had been asking to call into the medical unit for him, did so because, according to Plaintiff, "he seen that I looked pretty bad...I guess he had sympathy or whatever..." (Pl's Dep., pp. 43-44).

As reflected by the prison's records, Plaintiff submitted a medical request on October 10, 2010 in which he reported that his problem was that he was "withdrawing from Xanax and I never received any medication – I'm very dizzy and having severe panic attacks..." (Def. Ex. "C," CEC-000032). This request was purportedly received in the medical unit on October 12, 2010 and he was thereafter seen by a nurse in the unit on October 14, 2010. Plaintiff's symptoms and complaints were recorded, he was examined and found to have low blood pressure (105/55), a mild muscle twitch in his left leg, a heart rate of 84 beats per minute, a slightly elevated body temperature of 99 degrees and to be alert and oriented to person, place and time. He was diagnosed as suffering from anxiety related to Xanax withdrawal, and was referred to Psychiatry for follow-up and instructed in

---

physician assistant as a defendant on March 14, 2012, and that he did so on March 29, 2012, Plaintiff has never amended his pleadings to identify that intake physician assistant by name or to effectuate service upon that individual. On the other hand, Plaintiff did so move and leave was granted to amend his complaint to identify the two corrections officers by name via this Court's Order dated August 2, 2012. Plaintiff, however, apparently never did file such an amendment. We note further that his motion to amend identified these two officers as Robert Horan and A. Raupers and that while Plaintiff did provide these officers' names to the U.S. Marshal's Service and service was again attempted on August 3, 2012, the service attempt failed because "G.H.C.F. requires a full name for service. Amend Complaint to reflect the full and correct name." Again, however, it does not appear that Plaintiff ever acted upon the Marshal's Service' directive.

3

anxiety-reducing breathing exercises.  Plaintiff was also instructed to immediately return to medical if his anxiety increased or suicidal ideation developed to which Plaintiff verbalized that he understood.  (Def. Ex. "C," CEC-000008; Pl's Dep., 43-45).  Plaintiff testified that the nurse told him there was nothing they could do about it and that it would only be a few more days until withdrawal would be over.  Plaintiff also testified that his withdrawal symptoms remained bad for over a week.  (Pl's Dep., pp. 35-36).

Over the next several months, Plaintiff made a number of other requests for medical treatment for, in addition to his panic attacks and anxiety, a red rash and lesions on his leg, sore throat and sinus pain, a dental check-up and cleaning and for testing for sexually-transmitted diseases/HIV, all of which resulted in his being seen and treated in a timely fashion for those non-psychiatric conditions.  (Def. Exhibit "C").

However, despite his repeated requests and the psychiatric referral of October 14, 2010, it does not appear that Plaintiff was seen by the prison psychiatric unit until January 14, 2011, when he apparently reluctantly saw a psychologist, Dana Dantzler, whose notes state only: "pt did not want to come for visit." (Def. Ex. "C," CEC-000004, CEC-000006).  Plaintiff's recollection on this visit is spotty – he recalls only seeing her once and that she "put [him] in for a psych referral."  (Pl's Dep., pp.

4

53-56).

Two days later, Plaintiff was seen by David Neal, MSW/LSW, who took a more complete psychiatric history, noting that Plaintiff had been previously diagnosed as suffering from the following disorders: Bipolar, ADHD, PTSD, and Anxiety. (Def. Exhibit "C," CEC-000015-000016). Mr. Neal noted that Plaintiff had low frustration tolerance, few/poor coping skills, and found him to have a mood disorder, not otherwise specified. He likewise referred him to psychiatry for follow up. (CEC-000018).

Approximately one month later, on February 12, 2011, Plaintiff was seen by Dr. Grato Paneque, a psychiatrist, whose mental status evaluation revealed a "21-year old angry young man because 'I'm not getting my medication.'" Dr. Paneque found that Plaintiff's affect was slightly anxious, he was goal directed, had no psychosis, denied suicidal ideation but did give a history of one suicide attempt prior to prison. Dr. Paneque found Plaintiff to be suffering from anxiety disorder, mood disorder (not otherwise specified), and personality disorder (not otherwise specified). He discussed a trial of mood stabilizer and SSRI trial with Celexa but Mr. Haug "adamantly" refused all medications except for Xanax or Klonopin." (Def. Exhibit "C," CEC-000006; Exhibit "D"; Pl's Dep., 52-58). There is no evidence that Plaintiff was ever seen again for psychiatric care and, on March 11, 2011, he was transferred from George W. Hill

Correctional Facility to Graterford State Correctional Institution. (Pl's Dep., 59).

On August 19, 2011, Plaintiff applied for leave to proceed in forma pauperis, which was granted and Plaintiff's complaint accepted for filing on August 24, 2011 against the Warden, Medical Department and CEC, the operator of the George W. Hill Correctional Facility, along with Dr. Paneque, Emmanuel Asante, the prison's grievance coordinator and the two individual correctional officers to whom plaintiff alleged he repeatedly asked for medical care.  Motions to dismiss were filed and granted with prejudice as to George W. Hill Correctional Facility, its medical department and Dr. Paneque.  Leave to re-plead as to the remaining defendants was given and Plaintiff filed several amended complaints as to these moving defendants asserting that, by delaying and/or denying him prompt access to medical care for his Xanax withdrawal, the defendants violated the plaintiff's constitutional rights under the Eighth and Fourteenth Amendments.  It is as to these claims that Defendants[2] now move for the entry of judgment in their favor as a matter of law.

**Standards Governing Entry of Summary Judgment**

---

[2] The "moving" defendants for purposes of this motion are Community Education Centers, Inc. ("CEC") the operator of the prison under a contract with Delaware County, the (now-former) warden, Frank Green, and Emmanuel Asante, the prison's grievance coordinator.

6

Summary judgment is appropriate only if there are no genuine issues of material fact such that the movant is entitled to judgment as a matter of law. Erdman v. Nationwide Insurance Co., 582 F.3d 500, 502 (3d Cir. 2009); Fed. R. Civ. P. 56(a). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. Bilibi v. Klein, No. 05-3496, 2007 U.S. App. LEXIS 20694 at *3, 249 Fed. Appx. 284, 286 (3d Cir. Aug. 29, 2007)(citing Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). See also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." Kaucher, supra, (quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998)). In undertaking review of the evidence, district courts view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. See, Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004); Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). "If there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-

7

trial judgment cannot be granted." El v. Southeastern Pennsylvania Transportation Authority, 479 F.3d 232, 238 (3d Cir. 2007). "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." Id.; Crosby v. UPMC, Civ. A. No. 07-501, 2009 U.S. Dist. LEXIS 23736 at *24 (W.D. Pa. March 20, 2009).

## Discussion

As noted, Plaintiff instituted this civil action under Section 1983, 42 U.S.C., which reads as follows in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, "to make out a claim under §1983, a plaintiff must demonstrate that a person acting under color of state law deprived him of rights secured by the Constitution or laws of the United States." Albrecht v. Hamilton, No. 06-4313, 233 Fed. Appx. 122, 124 (3d Cir. April 26, 2007)(quoting Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994)). In accord, Lugar v. Edmondson Oil Co., 487 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed.2d 482 (1988)("The deprivation must be caused by the

8

exercise of some right or privilege created by the State ... or by some person who may fairly be said to be a state actor.")

Here, Plaintiff seeks relief under the Eighth and Fourteenth Amendments alleging that, by failing to treat him for Xanax withdrawal, the defendants were deliberately indifferent to his serious medical needs. It is well-settled that, pursuant to the Eighth Amendment's prohibition on cruel and unusual punishment, prison officials are required to provide basic medical treatment to inmates. Johnson v. Coleman, No. 12-3556, 2012 U.S. App. LEXIS 25471 at *4 (3d Cir. Dec. 13, 2012)(citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). However, the Supreme Court has made clear that "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." Bell v. Wolfish, 441 U.S. 520,535, n. 16, 99 S. Ct. 1861, 1872, n.16, 60 L. Ed.2d 447 (1979)(quoting Ingraham v. Wright, 430 U.S. 651, 671-672, n. 40, 97 S. Ct. 1401, 1412-1413, n. 40, 51 L. Ed.2d 711 (1977)). Thus, inasmuch as "[u]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law," the "proper inquiry" in evaluating the constitutionality of conditions or restrictions of pretrial detention is whether those conditions amount to punishment of the detainee." Id. If so, the inquiry thus proceeds to "first, whether any legitimate

purposes are served by [the challenged] conditions of confinement, and second, whether these conditions are rationally related to these purposes." Carson v. Mulvihill, No. 10-1470, 2012 U.S. App. LEXIS 14540 at *11 (3d Cir. July 16, 2012)(quoting Hubbard v. Taylor, 399 F.3d 150, 159 (3d Cir. 2005)).

This is not to say that the concept of deliberate indifference has no application in the instant case. As the Third Circuit has noted, "it would be anomalous to afford a pretrial detainee less constitutional protection than one who has been convicted." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)(quoting Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1079-80 (3d Cir. 1976)). "Thus, at a minimum the 'deliberate indifference' standard of Estelle v. Gamble[3] must be met." Id.[4]

The Estelle standard is by now a familiar one in §1983 jurisprudence. Specifically, it is a two-pronged test requiring

---

[3] 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed.2d 251 (1976).

[4] As the Third Circuit alluded in its recent unreported decision in Carson v. Mulvihill, supra, it really is not entirely clear which standard should be applied to analyze a Due Process claim in the context of inadequate medical treatment – the two-pronged legitimate purpose standard of Bell v. Wolfish, or the deliberate indifference standard of Estelle v. Gamble. See, Carson, 2012 U.S. App. at *14. However, the Carson Court held,

> We need not resolve today which standard applies because even under the Bell standard, which is arguably more protective of pretrial detainees' rights than the Estelle standard, we will affirm the District Court's determination that Carson's Due Process rights were not violated....we find that pursuant to Bell, the ACJF had legitimate, nonpunitive purposes for its determinations regarding Carson's asthma medication and wheelchair footrests...

Id. Given this confusion, we analyze this case under both standards.

10

a showing of: (1) deliberate indifference on the part of prison officials, (2) to a prisoner's serious medical needs. Estelle, 429 U.S. at 104, 97 S. Ct. at 291. Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Mutschler v. SCI Albion CHCA Health Care, 445 Fed. Appx. 617, 620 (3d Cir. Sept. 27, 2011)(quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994) and Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003)). "Deliberate indifference inheres in an official's 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" Smith v. Hayman, No. 12-2203. 2012 U.S. App. LEXIS 15322 at *8 (3d Cir. July 25, 2012)(quoting Estelle, 429 U.S. at 104-105). Thus, courts "have found deliberate indifference where a prison official: '(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended treatment.'" Johnson supra, at *4 (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A medical need will be considered serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Albert

v. Yost, Nos. 11-1453, 11-1454, 431 Fed. Appx. 76, 80, 2012 U.S. App. LEXIS 12401 at *9 (3d Cir. June 14, 2011)(quoting Montmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).

Liability under §1983 also requires the plaintiff to show the defendant's personal involvement in the alleged constitutional violation. Washington v. Showalter, 2012 U.S. App. LEXIS 18111 at *7 (3d Cir. Aug. 27, 2012). Such personal involvement "can be shown through allegations of personal direction or of actual knowledge and acquiescence." Id, (quoting Arqueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Finally, a deliberate indifference claim can also be made out against a supervisor, upon a showing that "(1) the supervisor's policies created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy." Lopez v. Correctional Medical Services, Inc., No. 11-1591, 2012

U.S. App. LEXIS 20168 at *7 - *8 (3d Cir. Sept. 26, 2012)(quoting <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 134 (3d Cir. 2001)).

On the other hand, the courts have made clear that negligence in the administration of medical treatment to prisoners is not itself actionable under the Constitution. <u>Inmates of Allegheny County</u>, 612 F.2d at 762. Similarly, "mere disagreement as to the proper medical treatment is also insufficient" to state a claim for constitutional deprivation. <u>Spruill v. Gillis</u>, 372 F.3d 218, 235 (3d Cir. 2004)(quoting <u>Monmouth County</u>, 834 F.2d at 346). In this fashion, "deference is given to prison medical authorities in the diagnosis and treatment of patients," and consequently, "courts may not second guess the propriety of a particular course of treatment, especially in the presence of sound professional judgment." <u>Johnson v. Coleman</u> and <u>Smith v. Hayman</u>, both <u>supra</u>, and citing, inter alia, <u>Inmates of Allegheny County</u>, 612 F.2d at 762.

Applying these standards to the case at hand, we cannot find that Plaintiff's rights under either the Eighth or the Fourteenth Amendments were violated by the actions and/or inactions of the moving defendants. Turning first to the more stringent, deliberate indifference standard, we again note that the gravamen of Plaintiff's complaint is these Defendants' purported deliberate indifference to his need for medical treatment for Xanax withdrawal and for his panic attacks and anxiety disorder.

Here, however, the record clearly demonstrates that contrary to his pleadings, Plaintiff in fact **was** treated for these conditions.  Specifically, the medical unit notes evince that Plaintiff was treated for withdrawal on October 14, 2010, albeit only with a referral for further psychiatric care and counseling for anxiety-reducing breathing exercises because Xanax was not available for prescription in the institution.  While we can well understand Plaintiff's dissatisfaction with this course of treatment and his desire to receive some type of medication to alleviate his symptoms, it is clear that this is not what the law requires.  See, e.g., U.S. ex. rel Walker v. Fayette County, 599 F.2d 573, 575 (3d Cir. 1979); Norris v. Frame, 585 F.2d 1183, 1188 (3d Cir. 1978); Holly v. Rapone, 476 F. Supp. 226, 230 (E.D. Pa. 1979)(no constitutional right to methadone or to the establishment of methadone maintenance facilities at corrective institutions).  And, in the months that followed, the record reflects that Plaintiff was seen a number of times in the medical unit for, inter alia, a rash, a sore throat, dental care and HIV testing, as well as for his continuing complaints of anxiety.  It appears that on each of these occasions he received some type of treatment and was referred on a number of occasions to psychiatric care, although he did not see a psychiatrist until February 12, 2011.  Thus, inasmuch as some treatment was provided to Mr. Haug, it is not the place of this Court to second guess

14

the adequacy of that treatment.  See generally, Estelle, supra, and its progeny.  For these reasons, we discern no deliberate indifference on the part of these defendants.[5]

Moreover, by Plaintiff's own admission, the withdrawal symptoms lasted for a little more than one week.  (Pl's Dep., 35-36).  Although Plaintiff continued to experience anxiety and was angry because he wasn't getting his medication, he nevertheless refused Dr. Paneque's offer of another drug - Celexa and/or an SSRI[6] to stabilize his moods, apparently advising the doctor that the only medications he would take were Xanax and Klonopin.  We reiterate that the Constitution requires only that medical treatment be provided – it does not mandate that the medical treatment provided comport with that desired by the inmate.  Accordingly, we find that summary judgment is properly entered in favor of Movants with respect to Plaintiff's Eighth Amendment claim.

Further, while the parameters of Plaintiff's Fourteenth Amendment claim are not entirely clear from the face of his pleadings or other submissions, we may infer that it too arises from Plaintiff's placement in the defendant correctional

---

[5] This finding is limited to these defendants alone, however.  We leave to another day the issue of whether those defendants who have not been served with process may have been deliberately indifferent.

[6] Short for "Selective Serotonin Reuptake Inhibitor" – "any of a class of drugs that inhibit the uptake of serotonin in the central nervous system and are used to treat depression and other psychiatric disorders." www.thefreedictionary.com.

facility's general population without being administered the medication of his choice to alleviate the discomfort caused by his withdrawal from Xanax and by the length of time that elapsed between Plaintiff's initial admission to the facility and his being seen by the psychiatric unit.  Presumably, it is Plaintiff's position that such "conditions of confinement" operated to "punish" him.  If so, it then falls upon the Court to determine whether any legitimate purposes are served by those conditions of confinement and whether these conditions are rationally related to these purposes.

Viewing the record in the light most favorable to the plaintiff and giving him the benefit of all reasonable inferences, we would agree that the failure to afford him medical care for some 9 days, from October 5 - October 14, 2010 for his withdrawal symptoms constituted punishment of a pre-trial detainee.  And, inasmuch as the record contains no evidence as to what, if any, legitimate purposes may have been served by this delay and the rational relationship which these conditions may have had to those legitimate purposes, genuine issues of material fact exist on these points.

However, as the above-referenced precedent makes clear, in actions against an institutional party or supervisory individuals, there must be a showing of personal involvement (i.e. personal direction or actual knowledge and acquiescence)

and/or the existence of a custom, policy or practice that caused the constitutional injury[7].  On this record, we find that there is evidence that a number of the facility's policies with respect to making sick call requests available on a daily basis to inmates, to scheduling inmates to be seen within 24 hours of receipt of those requests and to continuing to administer psychotropic medications to those inmates whose prescriptions can be verified may well have been violated in Plaintiff's case.[8] These facts notwithstanding, however, there is no evidence whatsoever that either Mr. Green or Mr. Asante had any knowledge that Plaintiff needed, was asking for and/or was being denied appropriate psychiatric treatment and care nor any evidence that they or any other representative of CEC knew or had reason to know that the written policies and procedures promulgated by CEC for the provision of such care at the facility were either inadequate or were not being followed.  For this reason, we are constrained to also grant the defendants' motion for summary judgment on Plaintiff's claim under the Fourteenth Amendment.[9]

---

[7]  See, Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-691, 96 S. Ct. 2018, 2035-2036, 56 L. Ed.2d 611 (1978).

[8]  See, Def. Exhibits "F," "G," "H," "I," and "J."

[9]  In their reply brief, Defendants express concern that Plaintiff may be raising a claim for common law negligence for the first time in his response to the motion for summary judgment.  This Court, however, does not read any of Plaintiff's Amended Complaints as so raising this claim or any other claim with the exception of those discussed herein.  Moreover, even if Plaintiff's pleadings may be so interpreted, we agree with Defendants that such a negligence/medical malpractice claim would fail inasmuch as it does not contain an appropriate certificate of merit as is required under Pennsylvania

Based upon all of the foregoing, we shall grant the motion of Defendants CEC, Emmanuel Asante and Frank Green for summary judgment and enter judgment in favor of those defendants as a matter of law. An order follows.

---

law.  See, e.g., Pa. R.C.P. 1042.3, 1042.7.